### GARRET VREELAND v. BERNARD VETTERLEIN.

1. Where a single broker is employed to sell real property, through whom a buyer is introduced, which is followed by a negotiation resulting in a sale, the owner and buyer cannot, by any arrangement between them, disappoint the claim of such agent for remuneration.
2. But where several brokers are openly employed, the entire duty of the seller is performed by remaining neutral between them, and he has a right to make the sale to a buyer produced by any of them, without being called upon to decide between these several agents as to which of them was the primary cause of the purchase.

---

The plaintiff in this case was non-suited on the trial at the Hudson Circuit, and the case was certified to this court for its advisory opinion, on a motion for a new trial.

The case made by the plaintiff was substantially as follows : That he was a real estate agent, and that the defendant applied to him to find him a customer for six acres of ground

which he wished to sell; that defendant said his price was four thousand dollars an acre, but he would take somewhat less; that defendant informed plaintiff that other agents had the same property for sale, and that if he, the plaintiff, found a customer, he should have commissions, and if either of the others found a customer, such agent so succeeding, should have the commissions; that plaintiff advertised the property in the usual way, and that one Mr. Henderson called upon him, having seen his advertisement, and inquired the price, and made an offer of eighteen thousand dollars. This the defendant declined to accept. That Mr. Henderson and the defendant had an interview, which resulted in nothing; that defendant then authorized plaintiff to sell the property for twenty thousand five hundred dollars, and that the plaintiff offered it at this price to Mr. Henderson, who refused it at that rate; that plaintiff informed Mr. Henderson that one Garrabrants, another agent of the defendant had an offer for this property of nineteen thousand five hundred dollars; that Mr. Henderson afterwards, accidentally becoming informed that a public sewer was to be constructed so as to drain the premises in question, changed his mind, and determined to give the price asked; and that, being apprehensive that if he called on plaintiff to effect the sale, he might encounter competition from the customer of Garrabrants, he called upon the latter, through whom he effected the purchase, paying therefor twenty thousand dollars to the defendant, and five hundred dollars, as commissions, to Garrabrants. The plaintiff likewise demanded five hundred dollars for his commissions, and payment being refused, this suit was brought.

For plaintiff, *J. Dixon, Jr.*

For defendant, *R. Gilchrist.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The insistment on the part of

the plaintiff was, that he had called the attention of the purchaser to the property sold, and was, in effect, the efficient cause of the sale.

This position would be tenable, if the sale had been the product simply of the acts of the plaintiff and the owner of the property. It is certainly true, as a rule of law, that, under ordinary circumstances, where a broker, employed to sell property, brings about an introduction of a buyer, and when a negotiation, resulting in a purchase, ensues on that foundation, the owner and the buyer cannot, by any arrangement, disappoint the claim of the agent for remuneration. If this could be done, it is obvious the agent would, in all cases, be in the power of his employer, who, by taking matters into his own hands, could, at will, defeat the just expectations and equitable rights of the broker or middleman. In this class of cases, the question then always is, whether, under the peculiar conditions of the given case, the agent was the efficient cause of the sale; and, when there is real doubt upon that point, such doubt must be solved by the jury. To this extent there seems to be entire uniformity in the decisions. *Wilkinson* v. *Martin*, 8 *Carr. & P.* 1; *Chilton* v. *Butler*, 1 *E. D. Smith* 150; *Shepherd* v. *Hedden*, 5 *Dutcher* 334.

But it appears to be equally obvious that another principle must be applied to cases in which several agents are avowedly employed by the owner. Under such circumstances, it would be impracticable to resort to the same rule as when a monopoly to sell is given to one. In the latter case, the implied understanding is, that the seller will not take advantage of the endeavors of the agent, and that no other person is authorized to do so. But in the instance of a number of agents, the agreement of non-interference is not so wide, for it extends to the act of the seller only. Where the property is openly put in the hands of more than one broker, each of such agents is aware that he is subject to the arts and chances of competition. If he finds a person who is likely to buy, and quits him without having effected

a sale, he is aware that he runs the risk of such person falling under the influence of his competitor—and in such case, he may lose his labor.   This is a part of the inevitable risk of the business he has undertaken.   On the other hand, if fortune should be propitious, a bidder for the property on sale, who has been solicited by his rival, may come to him, and by his means effect the bargain.   Now, in this competition, the vendor of the property is to remain neutral ; he is interested only in the result.   But when either of the agents thus employed brings a purchaser to him, and a bargain is struck at the required price, on what ground can he refuse to complete the bargain ?   Can he say to the successful competitor, this purchaser was first approached by your rival, and you should have refused to treat with him on the subject?   There is no legal principle upon which such a position could rest.   It is contrary to the usages of every day commerce.   Every advertisement of a stock of goods for sale, has a tendency to carry off the customers of rival dealers.   And if, therefore, it should be known to the vendor of the property that the agent, who introduces a purchaser to him has, by the usual arts of competition, taken such purchaser out of the hands of his rival, I am not aware of anything in the law which would justify such vendor in a refusal to complete the contract.   The task would be difficult and the risk great, if vendors were called upon to decide between the claims of contestants.   How would it be possible for such vendor to say whose influence it was that produced the sale, where the purchaser has been solicited by both agents ?   It would be at variance with all practical rules, to require the party selling to pronounce, under the penalty of paying double commissions, upon the metaphysical question, which agent, under such circumstances, was the efficient cause of the sale.   In the absence of all collusion on the part of the vendor, the agent, through whose instrumentality the sale is carried to completion, is entitled to the commissions. This rule, I think, will be found to be in accord with the cases heretofore decided.

Applying this test to the facts of the case before us, it is clear that the non-suit was right. The plaintiff did not earn the commissions, because he did not produce a purchaser. He may have come near doing so, but he did not do it. In his hands, Mr. Henderson flatly refused to take the property at the designated price. Nothing that the plaintiff did induced him to alter his mind. That was the result of a casual conversation with a third party. With this altered view, of his own volition he sought out the other agent, Garrabrants. He says he purposely avoided acting through the instrumentality of the plaintiff. Mr. Henderson was free to choose. There was nothing illegal in his conduct. Nor was there anything illegal in Garrabrants' acting as the middle-man. The defendant had nothing to do with this; but when Garrabrants presented to him Mr. Henderson as a purchaser, he had no choice but to receive him as such. Is it not clear that if he had refused to make the conveyance to Mr. Henderson, that Garrabrants could have recovered his commissions by suit? I do not see how such a claim could have been resisted for a moment. Under these circumstances, then, it is clear that the plaintiff has not been wronged—he is only unfortunate.

Let the Circuit Court be advised that the non-suit is right.

ELMER and DEPUE, Justices, concurred.