DEIBLER et al. v. GRAHAM et al.

No. 699.

Municipal Court of Appeals for the District of Columbia.

Nov. 30, 1948.

554

Philip J. Hennessey, Jr., of Washington, D. C. (Harry P. Warner and Quayle B. Smith, both of Washington, D. C., on the brief), for appellants.

Samuel Shapiro, of Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Suit was brought by a real estate brokerage partnership, Graham-Hall, for a commission allegedly due them for services rendered to Mr. and Mrs. Deibler, the appellants. The trial court, sitting without a jury, found that the brokers were entitled to the full amount of the commissions sued for, and defendants appeal.

Prior to July 19, 1947, the Deiblers listed their property at 4 West Leland Street, Chevy Chase, Maryland, with plaintiffs for sale. Plaintiffs interested Dr. George W. Chiswell in the property and on July 19, 1947, the parties entered into a sales agreement, which called for the brokers to be paid a $1,300 commission. Settlement was to be made at a Maryland title company within 90 days from the contract date or as soon thereafter as a title report could be secured. While awaiting title settlement, Dr. Chiswell decided that he wanted another property, and on September 1, 1947, he requested plaintiffs to secure for him a house more suitable to his needs.

On September 6, 1947, one of plaintiffs' salesmen located another property, at 7131 Connecticut Avenue, Chevy Chase, Maryland, which was satisfactory to Dr. Chiswell, and thereupon he and the owner of the second house, G. B. Wilson, signed a contract for its purchase. As originally drafted by plaintiffs and signed by Dr. Chiswell, this contract was made contingent upon the prior sale of the property at 4 West Leland Street, but this provision was not agreeable to Mr. Wilson and there was substituted therefor a provision that

settlement on the Chiswell-Wilson contract would be "on or before 10 days after the sale and settlement of Dr. Chiswell's house at #4 Leland St." Under the terms of the Chiswell-Wilson contract, plaintiffs were to receive and did later receive a commission of $500.

The 90-day period set for the settlement of the Chiswell-Deibler contract expired on October 17, and the title search on the West Leland Street property was completed before that date. In the interval, Dr. Chiswell, as "contract-owner" of the West Leland Street property, tried to resell it, but he did not succeed. Beginning October 13 various communications, one by telephone and others by letter, were exchanged between Dr. Chiswell and Mr. Deibler, each finally claiming that the other had breached the contract for the sale of the West Leland Street property. It finally happened that Dr. Chiswell did not purchase this property, but the parties entered into an agreement for the settlement of their differences. By this agreement Mr. and Mrs. Deibler released Dr. and Mrs. Chiswell from any further claims, and the Chiswells paid to the Deiblers $1,250, and also assigned to the Deiblers all of their right, title and interest to a deposit of $1,000 which the Chiswells had placed with plaintiff, as agent, on account of the purchase of the property. This agreement contained the following provision: "It is expressly understood and agreed that this settlement is in lieu of the fulfillment of the aforesaid contract made by George W. Chiswell and Carrie B. Chiswell to purchase from us as the owners of the realty and improvements thereon at #4 West Leland Street, Chevy Chase, Maryland, and releases them from all liability to us, based upon any common law rights or statutory rights which may be asserted by us."

In the present suit plaintiffs seek to retain the $1,000 deposit which they hold and sue for the remaining $300 of the full commission they were to receive under the Chiswell-Deibler contract. Defendants counterclaim for the $1,000 deposit. The trial court entered judgment for the plaintiffs in the amount of $300 and found against defendants on the counterclaim.

The parties agree that decision of the case must be governed by Maryland law, particularly by Maryland Code, Article 2, Section 17, providing as follows:

"Whenever, in the absence of special agreement to the contrary, a real estate broker employed to sell * * * leasehold estates * * * procures in good faith a purchaser * * * and the person so procured is accepted as such by the employer, and enters into a valid, binding and enforceable written contract * * * in terms acceptable to the employer, and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually in effect, unless the performance of such contract be prevented, hindered or delayed by any act of the broker."

Appellant Deibler contends, first, that his contract with Dr. Chiswell of July 19, 1947, is a "special agreement to the contrary," within the meaning of the Maryland statute, and, second, he argues that the actions of Graham-Hall in procuring a sale of another property to Dr. Chiswell "hindered" the performance of the contract and hence that the trial court erred in giving judgment for the commission to plaintiff. We consider these contentions in order.

1. By its general finding for plaintiffs, the trial court decided that there was no "special agreement to the contrary" sufficient to prevent the seller from becoming liable to the agent upon the negotiation of a valid, binding and enforceable written contract for the sale of the property. With this conclusion we agree. The "special agreement" relied upon by appellant is the following language contained in the Chiswell-Deibler sales contract which was signed by one of plaintiffs:

"The seller agrees to pay to Graham-Hall, Agent, the regular rate of commission fixed by the Washington (D. C.) Real Estate Board, the amount of which said commission being hereby assigned to the Agent by the seller *out of the proceeds of sale.* The party through whom settlement hereunder is made is hereby authorized and di-

rected to make deduction of the aforesaid commission from *the proceeds of the sale* and to make payment thereof to said Agent." (Emphasis supplied.)

■ It is argued by appellant that since, under the above provision, the commission was to be paid "from the proceeds of the sale," the completion of the sale was a condition precedent to the earning of the commission and hence that such provision in the sales contract constituted an "agreement to the contrary" within the meaning of the Maryland statute. We do not agree with this contention. While there are a number of Maryland cases interpreting the Maryland statute, none of them are directly in point as to what constitutes a "special agreement to the contrary."[1] We believe, however, that the statute clearly contemplates a specific agreement between the seller and the agent that the commission has not been earned when an enforceable contract has been signed by the buyer and seller. The clause relied upon by appellant deals only with the time and manner of the payment of the commission and was not a limitation of his right thereto.[2] We believe a more specific agreement would be necessary to contravene the plain provisions of the statute that the commission was earned when an enforceable contract was entered into. More important, however, is the fact that the settlement effected by the parties (without the knowledge or approval of appellees) specifically provided that such settlement was "in lieu of" the fulfillment of the Chiswell-Deibler contract. It therefore took the place of the actual settlement. Thus even if the consummation of the sale was a condition precedent to the payment of the commission this would not defeat recovery. It is fundamental that the parties to a sale may not agree to abandon it and compromise their

differences and thereby deprive the agent of his commission without his consent.[3]

■ 2. The trial court's general finding was equivalent to a finding of fact that appellees' acts did not hinder or prevent the performance of the Chiswell-Deibler contract, and, if such finding is not plainly wrong, it may not be disturbed on appeal. We believe the finding is amply supported by the evidence. While it is fundamental that real estate brokers, like other agents, must act in good faith toward their principals, the evidence here justifies the conclusion that appellees did everything within their power to protect the interests of appellants. It was Dr. Chiswell, not appellees, who took the initiative to obtain another property for him. Furthermore, there was no evidence that when Dr. Chiswell decided to purchase another home that he intended to abandon his contract with the Deiblers. On the contrary, as originally drawn the agreement of Dr. Chiswell for the purchase of the Wilson property made such agreement contingent upon the resale by Dr. Chiswell of the Deibler property and as finally consummated the contract provided that settlement on the Wilson house would be on or before 10 days after the sale and settlement of the Deibler property. Appellees did nothing against the interests of their principal. At all times prior to the final dispute over the date of settlement Dr. Chiswell proceeded upon the theory that he had made a binding contract to purchase the Deibler property, and he further recognized the binding effect of that contract by agreeing to pay $2,250 for his release from it. He did not forfeit his deposit of $1,000 but assigned it to appellants and also paid substantial additional consideration. Under such circumstances it must be held that the purchased release rather than the acts of the broker

[1] Buchholz v. Gorsuch, 144 Md. 62, 124 A. 389; Althouse v. Watson, 143 Md. 650, 123 A. 47; Coppage v. Howard, 127 Md. 512, 96 A. 642, rehearing denied 132 Md. 233, 103 A. 439; Pratt v. Realty Associates, D.C.Mun.App., 45 A.2d 478.

[2] Clark v. Dulien Steel Products, 54 Cal.App.2d 92, 128 P.2d 608; see Hatch v. Dayton, 130 N.J.L. 425, 33 A.2d 350; cf. Stern v. Gepo Realty Corporation, 289

N.Y. 274, 45 N.E.2d 440; Note 73 A.L.R. 929; Note 51 A.L.R. 1399; contra Leaman v. Rauschkolb, La.App., 1 So.2d 338.

[3] Dermody v. New Jersey Realties, 101 N.J.L. 334, 128 A. 265; North Ave. Casino Co. v. Ferguson, 130 Md. 376, 100 A. 628; see Amies v. Wesnofske, 255 N.Y. 156, 174 N.E. 436, 73 A.L.R. 918.

was the cause of the nonperformance of the contract. A broker may not be deprived of his commission for services performed by subsequent acts of the parties without his consent. This was true at common law and remains so under the Maryland Code.[4]

We conclude that the judgment is supported both by the law and the evidence and therefore will be

Affirmed.

---

[4] North Ave. Casino Co. v. Ferguson, supra; Pratt v. Realty Associates, supra; Down v. DeGroot, 83 Cal.App. 155, 256 P. 438; 12 C.J.S., Brokers, § 58; 8 Am. Jur., Brokers, § 184.